LEE SHUBERT and Another, as Receivers of SHUBERT THEATRE CORPORATION, Respondents, *v.* GENE BUCK, Appellant.

First Department, May 12, 1933.

*David Greenstein*, for the appellant.

*Alfred McCormack* of counsel [*Thomas A. Halleran* with him on the brief; *Cravath, de Gersdorff, Swaine & Wood*, attorneys], for the respondents.

PER CURIAM. The plaintiffs, as receivers of Shubert Theatre Corporation, brought this action on a promissory note, in bearer form, held by them as such receivers.

The answer admits the execution and non-payment of the note but sets up four defenses, one being also designated a counterclaim. On motion by plaintiffs the court struck out all the defenses and the counterclaim.

The first defense adequately sets forth that there was no consideration for the note and the defense is, therefore, sufficient. (*Ellis* v. *Keeler*, 126 App. Div. 343; *California Packing Corp.* v. *Kelly S. & D. Co.*, 228 N. Y. 49; *Donnelly* v. *Bauder*, 217 App. Div. 59; *Zebold* v. *Hurst*, 65 Okla. 248; 166 Pac. 99.)

The second defense is a mere conclusion. It states that notwithstanding his agreement with the defendant, entered into simultaneously with the execution of said notes or either of them, the plaintiff Lee Shubert diverted the said notes from the purpose for which they were made, executed and delivered to him, by defendant. There are no facts set forth to show by what means these notes were diverted from the purpose for which they were made. This defense is clearly insufficient.

The third defense is stated by the appellant to be either a defense of duress or a defense that the note was delivered upon condition that the maker should not be liable thereon. The facts set forth in this defense clearly show that there was no duress and fail to set forth a defense of conditional delivery. It is alleged that the note was given for a loan of money to be used to pay the salaries of those taking part in a theatrical performance; that the show closed and the defendant had no money with which to pay those taking part and in order to secure such money, the defendant induced the plaintiff Lee Shubert to give him an amount sufficient

to pay the members of the cast. The facts pleaded do not constitute a defense of any kind.

The fourth alleged defense, as a defense, is worthless. The facts are also pleaded as a counterclaim. When considered most favorably to the defendant the facts allege that the plaintiffs are indebted to the defendant in the sum of $4,050, no part of which has been paid. This pleading sets forth sufficient facts to constitute a counterclaim or setoff against the plaintiffs.

The order, therefore, should be modified in so far as to deny the motion to strike out the first defense and the counterclaim, and as so modified affirmed, without costs, with leave to defendant to plead over as to the second defense, if he be so advised, within ten days from service of order.

McAvoy, Martin, O'Malley and Townley, JJ., concur; Finch, P. J., dissents in part.

Finch, P. J. (dissenting in part). In my opinion the third defense alleges ultimate facts sufficient to constitute duress and entitle defendant to an opportunity to submit his proof at the trial in support thereof.

This is an action between the original parties and no rights of third parties are involved.

Duress in the inception of the note in suit is alleged to have arisen as follows: The Shubert Theatre Corporation, of which the plaintiffs are receivers, on the last day of presentation of a play which the defendant was producing in Boston, by force seized all the box office receipts. In consequence defendant had seventy-five employees stranded on his hands in a strange city without money and even carfare back home to New York city. Defendant had no choice. Under his contract he could not leave these employees in Boston and, being without money, he could not take them to New York. The only recourse of defendant to obtain money was to accede to the demands of the Shubert Theatre Corporation and sign the note in suit.

The above facts are suffiicent, if proven, to constitute duress. The term " duress " is sufficiently broad to cover all those occasions which prevent the untrammeled exercise of the will in our complex civilization. In *Van Dyke* v. *Wood* (60 App. Div. 208, 212) it is said: " The principle upon which men are relieved from their contracts procured by duress has been greatly extended in recent years. In the time of Lord Coke no one would have been permitted to avoid his contract for duress, unless the duress was such as not only to put him in fear of illegal imprisonment or great bodily harm, but went so far as to be something that a man of ordinary firmness would not be able to resist. No possible loss to his land

or property would be sufficient to enable him to avoid a contract which he had made to prevent it. * * * But gradually and by slow degrees the strictness of that rule was abated until finally it has come to be the rule of law in this country, * * * that where one is presented with the contingency of serious loss or damage to his property or of a submission to an extortionate claim, if he pay the claim or make the contract which is extorted from him it is not to be considered a voluntary act, and it may be set aside on the ground of duress. * * * In the case of *Sasporias* v. *Jennings* (1 Bay [S. C.], 470) it was held that duress of goods will avoid a contract where an unjust and unreasonable advantage is taken of a man's necessities of getting his goods back into his possession, and there is no other speedy means left of getting them back but by giving a note or bond, or where a man's necessities may be so great as not to admit of the ordinary process of the law to afford him relief."

In consequence, the third defense should not be struck out.

Order modified in so far as to deny the motion to strike out the first defense and the counterclaim, and as so modified affirmed, without costs, with leave to the defendant to plead over as to the second defense, if he be so advised, within ten days from service of order.