[No. 5410.]
[No. 3067 C. A.]

## DRAKE v. THE PUEBLO NATIONAL BANK.

1. **Pledges—Conversion by Pledgee—Pleading—Complaint—Mistake in Note—Allegation of Note Intended—Sufficiency.**

A complaint, in an action to recover damages for the unlawful sale, without notice, of collaterals to a note, alleged the making of the note, setting it out in haec verba, and then alleged that all that portion of the note beginning and ending with certain words which related to the sale of collaterals without notice, was left in the note as a part thereof, while, under the agreement

of the parties, it should have been erased. Held, that the complaint sufficiently set out the note alleged to have been the one intended, under the rule that, where relief is sought on the ground that by mistake an agreement as contained in a written instrument does not conform to the one actually made between the parties, the one which was made must be alleged and the real intention thereby clearly disclosed.—P. 53.

2.   Same—Uncertainty of Terms.

A promissory note was given payable one day after date, and recited the deposit of certain shares of stock with the payee as collateral security. Held, that the note was not vague or uncertain in that it could not be determined what the agreement was as to sale of the collateral security, or when the time to redeem the collaterals expired; since, in the absence of a contract fixing the manner in which the sale should be made, a "power of sale" will be construed to be such power as exists in respect to pledges generally, and exercised in the same way; that is, that the power of sale can be exercised only upon reasonable notice to redeem and of the time and place of sale.—P. 54.

3.   Reformation of Instruments — Pleading — Complaint — Relief Asked—Effect.

In an action to recover damages for the unlawful sale, without notice, of collaterals to a note, the complaint alleged that the note contained by mistake a provision for sale without notice, which should have been erased. Held, that the complaint was sufficient to authorize the relief asked for, though the reformation of the note was not prayed for, since the measure of plaintiff's rights is the facts which are alleged, and not the prayer of the complaint.—Pp. 55, 56.

4.   Bills and Notes—Promissory Notes—Extension of Payment—Consideration.

The delivery of an unrecorded patent to land to the payee of a note is a sufficient consideration for the promise of the latter to extend the time of payment of the note, for although the patent is of no value to the payee, it would cause expense to the maker to procure another patent.—P. 57.

5.   Same—Time of Extension—Necessity.

The failure to extend the payment of a note to any definite time does not render the extension invalid as between the parties.—P. 57.

6.   Pledges—Conversion by Pledgee—Sale Without Notice.

A note payable one day after date, secured by collaterals, contained no provision as to the sale of the collaterals without notice, and the note was indefinitely extended. Held that, in an

action to recover damages for the wrongful sale of the collaterals without notice, it could not be contended that since the note was payable on its face at a fixed time, a demand for payment was not a requisite condition precedent to the sale of the collaterals, in view of the fact that the payment of the note was extended indefinitely, and therefore became payable on demand and required notice to the maker.—P. 58.

*Error to the District Court of Pueblo County.*
*Hon. N. Walter Dixon, Judge.*

Action by James F. Drake against The Pueblo National Bank for damages for the unlawful sale of collaterals to a note. From a judgment sustaining a demurrer to the complaint, plaintiff brings error.

*Reversed.*

Mr. J. C. ELWELL and Mr. JAMES F. DRAKE, for plaintiff in error.

Messrs. DEVINE & DUBBS, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The complaint in this action alleges that on the 11th of May, 1898, plaintiff made and delivered to defendant his promissory note for $401.50, payable one day after date, with interest at the rate of one per cent. a month from date until paid, said note reciting the deposit with defendant as collateral security of five hundred shares of stock in The Isabella Gold Mining Company, and certain shares of stock in other mining companies. After reciting the deposit of this stock, there is a provision in the note whereby the defendant was authorized to sell without notice at public or private sale in case of the nonpayment of the note, and that the agreement by which the defendant was authorized to sell should extend to any additional collaterals which might be deposited to secure the payment of the note. In the

clause providing for the sale of the collateral it appears that there were certain blank spaces in which were to be inserted pronouns describing the maker of the note.

The complaint then alleges that plaintiff deposited with the defendant the shares of stock mentioned in the note, and that it was not the intention of the parties that the portion of the printed form of the note providing for the sale of the collaterals without notice should remain as a portion of the contract, but that an erasure of that portion should have been made, and that it was not done; that plaintiff never authorized defendant to sell the collateral or any part of it without demand of payment of the note and a reasonable time and opportunity to redeem the collateral; that he never authorized a private sale of the collateral without notice to him of the time and place of the sale; that after the maturity of the note the defendant requested plaintiff to deposit with it an unrecorded United States patent to one hundred and sixty acres of land, situate in Pueblo county, Colorado, as additional security, this patent having been issued to and standing in the name of the plaintiff; that in consideration of such deposit the defendant agreed that the time for the payment of the note would be extended indefinitely; that in consideration of this agreement plaintiff did deposit the patent with defendant; that defendant accepted the paper in accordance with the agreement, and still has possession of it; that the defendant at no time made any demand upon plaintiff for the payment of the note, and gave the plaintiff no opportunity to redeem the securities; that upon the tenth day of January, 1899, without notice to the plaintiff, defendant sold and converted to its own use the five hundred shares of stock of The Isabella Gold Mining Company; that this sale was made without advertisement or notice; that

plaintiff was at all times able and willing to pay the note upon the return of the securities, and that upon the 15th day of February, 1899, he made a tender to defendant of the amount due on the note, including interest, in gold coin of the United States, and demanded a return of the securities and title paper; that defendant refused to accept the tender and refused to return the securities or any of them; that the securities are worth $2,500.00, and plaintiff demands judgment for the return of the securities and for $2,500.00 damages. To this complaint a general demurrer was filed and was sustained and the case is brought here upon error.

In support of the ruling of the court the defendant in error contends, first, that the complaint was defective in that it did not disclose the agreement relied upon, and depends upon the principle that where relief is sought on the ground that by mistake an agreement as contained in a written instrument does not conform to the one actually made between the parties, the one which was made must be alleged and the real intention clearly disclosed. We think a fair reading of the allegations of the complaint conforms to this doctrine. The complaint alleges the making of the note, setting it out *in haec verba,* and then alleges that all of that portion of the note commencing with the word "which" and ending with the words "additional collaterals" was left in the note as a part thereof while under the agreement of the parties it should have been erased. This makes it perfectly clear as to what the contract actually was, that is, it was the contract as written, less the paragraph which it is alleged should have been eliminated, leaving it a note in ordinary form, payable one day after date and reciting that there had been deposited with the bank as collateral security certain shares of mining stock. But, the defendant says,

that this is an illogical proposition, that in logic to declare a thing is not X is by no means equivalent to declaring that it is Y, it might be any of the other letters of the alphabet. That is true, but, if we say that the German alphabet consists of the same characters as the English alphabet after eliminating the letter J, we as effectually state that the German alphabet contains all of the letters to be found in the English, with the exception of J, as we would have done had we stated the name of each letter contained in the German. So, when the complaint in this case alleges that the contract as agreed upon consists of the one set forth in the note, with the exception of a single paragraph which should have been eliminated, that agreement is as fully alleged as it would have been had the note been again printed in the complaint omitting the part which it is alleged should have been erased. That which can be made certain is certain.

It is argued that with the elimination of the clause contained in the note providing for the sale of collaterals without notice, the agreement is vague and uncertain and it cannot be determined what it was, or when the time to redeem it should expire. In the absence of a contract fixing the manner in which the sale should be made, the power of sale will be construed to be such a power as exists in respect to pledges generally, and exercised in the same way, that is, that the power can be exercised only upon reasonable notice to the debtor to redeem and of the time and place of sale.—*Goldsmidt v. Trustees of First M. E. Church*, 25 Minn. 202; *Moffat v. Williams*, 5 Col. App. 184; *Stearns v. Marsh*, 47 Am. Dec. 248.

In the last named case the court says:

"It is said that the law makes a distinction between the case of a pledge for a debt payable im-

mediately, and one where the debt does not become payable until a future day; and that in the latter case the creditor is not bound to call for a redemption or to give notice of sale, though in the former it is conceded that there must be such demand and that notice must be given. * * * I find no authority countenancing the distinction contended for; but on the contrary, I understand the doctrine to be well settled, that whether the debt be due presently, or upon time, the rights of the parties to the pledge are such as have been stated.'' (Citing many American and English authorities.) ''Nor do I see any reason for such a distinction. In either case the right to redeem equally exists until a sale.''

It is next urged on the part of defendant in error that the complaint was defective because plaintiff asked no reformation of the note actually executed, arguing that the mistake alleged to have been made in the note cannot be proven unless the plaintiff prays for the reformation. This seems to be the doctrine in Indiana.—*Scott v. Norris et al.*, 6 Ind. App. 102. But it is not supported by the weight of authority.

In vol. 6 of Current Law, page 1284, it is said that:

''In a suit to enforce a contract, a petition which alleges a mistake or fraud sufficiently is not defective because it fails to pray for a reformation, and evidence of mistake or fraud is admissible, as a court may always reform a written instrument where the issues and proof justify such relief, although reformation is not specifically prayed for.''

In 9th Cyc., page 406, in speaking of contracts of this character, it is said:

''If a contract is still executory, the party complaining of a mistake avoiding the same may re-

pudiate the contract and set up the mistake as a defense in an action at law or suit in equity brought against him to enforce the contract or recover damages for its breach, or he may obtain relief in equity, in a proper case, by suit to cancel or rescind the contract, or reform it, or by suit for an injunction. If the contract has been executed by him he may rescind the same and recover on the *quantum meruit* or *quantum valebat* for what he has done or furnished under it; or he may recover money or property paid or delivered by him under the agreement. Or in a proper case the mistake may be set up to show that there was no contract where the existence of the contract is relied upon in other actions or provisions.''

The measure of plaintiff's rights is the facts which are alleged, and not the prayer of the complaint. The allegations of the complaint constitute the basis of the action, and if they are sufficient to afford relief the court will grant such relief as plaintiff is entitled to, notwithstanding he has failed to ask in his prayer for a portion of that relief.

The complaint alleges that after the note became due, the defendant requested plaintiff to deposit with it an unrecorded United States patent to one hundred and sixty acres of land, issued to, and standing in the name of, plaintiff; and defendant agreed with plaintiff, that in consideration of such deposit, the time of the payment of such note should be extended indefinitely, and that pursuant to such arrangement the deposit was made. Defendant in error says that this is not a sufficient allegation of a consideration for the extension, for the reason that the patent was of no value to defendant, that the doctrine of an equitable mortgage being created by the deposit of title papers does not obtain in this state. It is unnecessary for us to determine whether the deposit of

unrecorded title papers constitutes a lien upon the property or not.   This patent was of some value to the plaintiff.   It was the only means by which he could prove his title to the property and, although he might obtain from the government a certified copy of the patent, it would put him to inconvenience and expense to do so.

As was said in *Drescher v. Fulham et al.,* 11 Col. App. 62:

"It is immaterial how insignificant the benefit to the promisor, or how slight the inconvenience or damage to the promisee may appear, provided it is susceptible of any legal estimation, it is an adequate consideration."

Applying that doctrine to the present case, whether the patent was of value to defendant or not, its value to plaintiff was at least an amount equal to what it would cost him to procure a duplicate or certified copy of the same, and that is a sufficient consideration for the extension of the time of the payment of the note.

It is also urged that the alleged extension of the time for the payment of the note was void because of its uncertainty, that in order to make it a valid agreement the time should have been extended for some definite period.

*Fisher v. Denver Nat'l Bank,* 22 Colo. 373, and a number of cases from other states are cited in support of this doctrine, but those cases have no bearing upon the facts in this case as they relate entirely to the liability of a surety.   A contract which might be invalid because it affects the rights of third parties would be perfectly legal between the parties to the contract themselves, and more especially when it is relied upon by one of the parties.

"The mere indeterminate period as to time of delay does not invalidate a contract if the agreement

implies a reasonable time within which payment would be expected."—*Nott v. State Nat'l Bank*, 51 La. 871.

It would be monstrous in a case of this character to permit the creditor to say to the debtor "if you will give me additional security, I will extend the time of the payment of your note until it is more convenient," and then without notice to the debtor sell the securities and deprive him of his right to redeem and permit the creditor to escape liability, because, forsooth, there was no fixed time for the extension.

Defendant says that because the note was payable on its face at a fixed time, to wit: one day after date, a demand for payment was not a requisite condition precedent to the sale of the securities; but, the difficulty with that contention is that under the allegations of the complaint the time for the payment of the note was extended for some indefinite period, and it consequently then became one payable upon demand and under the allegations of the complaint there was no contract which authorized the creditor to sell the securities without notice.

In the absence of a contract authorizing the sale without notice, the creditor is compelled to notify the debtor of the time and place of the sale.

The complaint in this case states a cause of action against the defendant, and the demurrer should have been overruled. Consequently, the judgment of the district court must be reversed.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.