**BOBIER et ux. v. HORN.**

No. 11132—Opinion Filed June 12, 1923.

Rehearing Denied July 24, 1923.

(Syllabus.)

1. **Bills and Notes—Inquiry Into Consideration—Right of Remote Parties.**

The rule permitting inquiry into the consideration of a note applies to original or immediate parties, or to parties between whom there is a privity, but not as to remote parties.

2. **Mortgages—Validity—Who May Impeach for Want of Consideration.**

In an action for the foreclosure of a mortgage executed by the holder of the equitable

title in lands, the holder of the naked legal title cannot impeach the validity of the mortgage on the ground of want of consideration.

**3. Subrogation—Right of Holder of Naked Legal Title to Land Settling Judgment Lien.**

The naked legal title to lands is not such an interest as will authorize or permit the holder thereof to pay or settle a judgment lien against such property and be subrogated to the rights of the judgment creditor.

**4. Same—Payment of Judgment by Stranger —Extinguishment.**

The payment of a judgment by a stranger operates as an extinguishment of it, unless there is an understanding or agreement that it is to be kept in force for the benefit of the person making the payment.

**5. Trusts—"Resulting Trust."**

A resulting trust arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred, from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the grantor whom equity deems to be the real owner.

**6. Same—Establishment by Parol.**

Resulting trusts are not within the statute of frauds, and may, therefore, be established by parol evidence, where not otherwise incompetent.

**7. Same—Mortgages—Validity of Mortgage by Owner of Equitable Title.**

Where the naked legal title to the homestead of the grantor is conveyed to his son without consideration, and under the false impression of the father that the property could and would be sold to satisfy an anticipated judgment against him, and with the intention and understanding that the real title and interest thereto should remain in the grantor, who, for a period of more than seven years thereafter, and until his death, continued to occupy said premises as his homestead and cultivated and treated it as his own, collecting rents and paying taxes thereon, and the grantee, although living in the immediate vicinity, made no claim to the possession of the land or to the rents and profits of the same, and did not pretend to own or to exercise any supervision or control over it until after the death of the grantor, and where said land was conveyed under an express agreement that the grantee would reconvey said property upon request of the grantor, held, that the full equitable title to the land was in the grantor at the time of his death, and that the same may be sold to satisfy a mortgage previously given thereon by such grantor.

**8. Same—Homestead—"Fraudulent Conveyances" in Trust—Right of Grantor to Reconveyance.**

Although, under the general rule, equity will refuse relief to either party to an agreement tainted with illegality or fraud, yet, where a father, joined with his wife, conveys the naked legal title to their homestead to a son under such conditions and circumstances as would create a resulting trust in favor of the grantors, and under the false impression that the homestead could be sold to satisfy an anticipated judgment against the father, the son will not be permitted to invoke the equitable rule above set forth, and hold said property and refuse to reconvey the same, for the reason that the conveyance was not fraudulent as against the creditors of the grantor, as in no event could the homestead have been subjected to the payment of said debts or judgment.

**9. Appeal and Error — Review of Equity Case—Findings—Evidence.**

In an equitable action, the findings of fact of the trial court will be sustained, unless they are clearly against the weight of the evidence.

**10. Same—Sufficiency of Evidence.**

The record in this case examined, and held, that the findings and judgment of the trial court are not clearly against the weight of the evidence.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by Ida R. Horn against Thomas E. Bobier and wife to foreclose mortgage. Judgment for plaintiff, and defendants bring error. Affirmed.

A. M. Baldwin and A. J. Carlton, plaintiffs in error.

T. G. Cutlip and W. S. Pendleton, defendant in error.

MASON, J. This action was instituted in the district court of Pottawatomie county, Okla., by Ida R. Horn, as plaintiff, against Thomas E. Bobier, Mrs. Thomas E. Bobier, Louisa Bobier, R. L. Alexander, administrator of the estate of J. A. Bobier, deceased, R. L. Alexander, George Knapp and the Oklahoma Farm Mortgage Company, as defendants. For convenience, the parties will hereinafter be referred to as they appeared in the trial court.

This is the second time this action has been in this court on appeal. The rights of all the defendants, except Thomas E. Bobier and Mrs. Thomas E. Bobier, were finally disposed of before the second trial. Plaintiff and defendant Thomas E. Bobier are stepbrother and sister, respectively, the former the daughter of Mrs. Louisa Bobier, and the latter the son of J. R. Bobier.

The plaintiff's cause of action was based upon a note executed to her by J. R. Bobier

and his wife, Louisa Bobier, and to foreclose a mortgage on a tract of land in section 13, township 6 north, range 3 east, given as security for the indebtedness represented by the note. Plaintiff conceded that the naked title was in the defendant, Thomas E. Bobier, but she alleged that he held the land in trust for J. R. Bobier and his wife, Louisa Bobier, the real owners.

Plaintiff offered evidence tending to prove that J. R. Bobier and wife were the owners of and resided on the land in controversy as their homestead in the year of 1906, and continued to reside thereon until the death of J. R. Bobier on the 30th day of March, 1914.

In November, 1906, a certain suit had been instituted and was pending against J. R. Bobier on a promissory note given by him in payment of the purchase price of a stallion. Under the claim that he had been defrauded in the transaction whereby he purchased the stallion, Mr. Bobier was resisting a recovery against him in the action, but was laboring under the false impression that in case judgment should be rendered against him his home could and would be sold on execution. To prevent this contingency he and his wife conveyed the land to his son, Thomas E. Bobier, without any consideration whatever being paid therefor by the said Thomas E. Bobier, and with the distinct understanding that the same would be reconveyed to the grantors after the termination of said litigation, or at any time requested by them.

After the execution of said deed, the grantors remained in possession of the property and continued to occupy it as their homestead. On the 6th day of July, 1911, which was about five years after the execution of said deed, J. R. Bobier and wife gave to the plaintiff in this action their promissory note for $1,500, and as security therefor executed a mortgage which the plaintiff seeks to foreclose in this action.

The Oklahoma Farm Mortgage Company had the first mortgage on the entire tract of land, while R. L. Alexander had a mortgage on 40 acres of said tract, both of which were valid liens at the time J. R. Bobier and wife executed the deed in question to Thomas E. Bobier, and also at the time of the execution and delivery of the note and mortgage sued on by the plaintiff, Ida Horn.

In the original action the Oklahoma Farm Mortgage Company foreclosed its mortgage lien against the entire 160-acre tract; and R. L. Alexander foreclosed the mortgage lien which he had on the 40-acre tract. The Oklahoma Farm Mortgage Company assigned its judgment to the plaintiff Ida Horn and thereafter Thomas E. Bobier paid said judgment and the same was satisfied of record on June 20, 1917.

The defendants contend that Thomas E. Bobier purchased the land in question from J. R. Bobier and Louisa Bobier for a valuable consideration, and that he is the owner of both the legal and equitable title in said lands. Defendants deny that Thomas E. Bobier held the same in trust for J. R. Bobier and Louisa Bobier, and they further deny that he ever had any conversation or agreement whereby he was to reconvey said lands to the said J. R. Bobier and Louisa Bobier. Several witnesses for the defendants testified that, subsequent to the date of the execution of the deed from J. R. Bobier and Louisa Bobier to Thomas E. Bobier, J. R. Bobier told them the property involved herein belonged to his son, Tom.

After the trial, without a jury, the court entered a decree in favor of plaintiff for the amount of the note with interest, attorney's fee, costs, and for the foreclosure of the mortgage lien.

For reversal, counsel for plaintiffs in error first contend that the trial court erred in overruling the demurrer of the defendants; in overruling defendants' motion for judgment on the pleadings; in overruling defendants' objection to the introduction in evidence of plaintiff's mortgage; in admitting plaintiff's note and mortgage in evidence, "for the reason that the petition failed to show that the mortgage tax had been paid," as required by section 5, p. 686, Session Laws 1913.

It will not be necessary to discuss these questions, however, as the case-made has been withdrawn by permission of this court since the filing of the brief herein, and the same has been corrected under the supervision of the trial court so as to show that, at the time the original mortgage was introduced in evidence, the mortgage tax thereon had been paid, and it bore the county treasurer's indorsement showing said payment, which indorsement had been inadvertently omitted from the case-made by the court reporter.

It further appears from the testimony of the plaintiff that J. R. Bobier and Louisa Bobier, his wife, were old and infirm, and that the plaintiff, Ida Horn, had lived with and taken care of them and acted as their housekeeper for several years, and in consideration for such services the note sued on herein was executed and secured by the

mortgage as aforesaid.

The defendants contend that the note and mortgage were given without consideration, and offered the evidence of a number of witnesses to the effect that the plaintiff, Ida Horn, had never performed any work and labor for J. R. Bobier and Louisa Bobier, to the introduction of which evidence the trial court sustained an objection of the plaintiff. Counsel for plaintiffs in error assign this action of the trial court as their next specification of error for reversal of this case. In support of this contention, counsel cite section 7698, Comp. Stats. 1921; Hagan v. Bigler, 5 Okla. 576, 49 Pac. 1011; Deming Investment Co. v. Shannon et al., 62 Okla. 277, 162 Pac. 471; Zebold v. Hurst, 65 Okla. 248, 166 Pac. 99. These citations, however, are not applicable to the question under consideration, but support the general rule, which is well settled, that as between the original or immediate parties to the execution of a bill or note, the consideration may be inquired into and shown, but in the case at bar, Thomas E. Bobier and Mrs. Thomas E. Bobier were not parties to the instrument, and therefore the rule is not applicable.

In Law of Defenses in Action on Commercial Paper, by Joyce, sec. 187, p 211, we find the following:

"The rule permitting an inquiry into the consideration of a bill or note generally, or even though the words 'value received' are expressed, applies to original or immediate parties, or to parties between whom there is a privity, but not as to remote parties; that is, inquiry into the consideration of negotiable paper can only be made between privies or immediate parties thereto, as the maker and payee, and indorser and his indorsee. All other parties to negotiable paper are called remote, and, as between them, a consideration for making or indorsing the same is presumed."

In 27 Cyc. p. 1050, we find the general rule stated as follows:

"The validity of a mortgage may be impeached, on the ground of want of consideration, not only by the mortgagor himself, but also by third persons having an interest in the property, as creditors, purchasers, or incumbrancers not having notice of the defect."

No contention is made that the defendants, Thomas E. Bobier and Mrs. Thomas E. Bobier, were parties to either the note or mortgage sued on by the plaintiff. Was the title of the defendants such as would permit them to prove that the note was executed without consideration? We think not. If they held both the legal and equitable title, it was paramount to and not affected by said mortgage. If they held the bare legal title, it would not be affected by a foreclosure of a mortgage executed by the holder of the equitable title, and, therefore, the holder of the legal title could not question the consideration of the note secured by said mortgage.

The plaintiffs in error next contend that the trial court erred in adjudging that the defendant Thomas E. Bobier was not entitled to subrogation to the Oklahoma Farm Mortgage Company judgment lien, which had been assigned to Ida Horn, upon the payment and discharge of the same by him, while he held the title to said lands under the deed from J. R. Bobier and wife.

The defendants contend that Thomas E. Bobier was the owner in fee simple of the land in question by virtue of the deed executed by J. R. Bobier and wife at the time the mortgages of the Oklahoma Farm Mortgage Company and R. L. Alexander were foreclosed. Under this contention, which is contrary to the findings of the trial court, if he paid and satisfied said mortgages, or either of them, it would not be unfair to assume he paid the same to protect his fee simple interest in the land. In that event, by the union of the superior and inferior title or lien in the same person, the lesser or inferior lien merged itself into that of the superior, and the mortgage lien could not have been kept alive without an express agreement to that effect with the debtors. No claim or contention is made by the defendants that the debtors, J. R. Bobier and Louisa Bobier, had any agreement or arrangement with Thomas E. Bobier whereby he should pay said judgment, and thereby be substituted for J. R. Bobier and Louisa Bobier.

On the other hand, if Thomas E. Bobier was not the owner in fee of said lands, by virtue of the deed from J. R. Bobier and wife, but, as the trial court found, held only the naked legal title in trust for his grantors, then his title was not such as would authorize or permit him to pay said liens and invoke the doctrine of equitable subrogation, for the reason that he had no legal and equitable interest to protect. The payment of these demands, liens, or judgments was for the benefit of the cestui que trust, and not for the trustee. One who pays the debt of another must have acted under compulsion to save himself from loss. It is only when the person pays the debt to protect his own interest that equity will substitute such person to the position of the creditor without an agreement to that effect; otherwise,

the debt is extinguished. and he who pays it is a volunteer or intermeddler without an interest to protect. The payment of a judgment by a stranger operates as an extinguishment of it, unless there is an understanding that it is to be kept in force for the benefit of the person making the payment. 25 R. C. L. par. 11, p. 1324, par. 22, p. 1337; 37 Cyc. pp. 375, 376; H. H. Crumlish's Administrator v. Central Improvement Co. et al. (W. Va.) 23 L. R. A. 120; McDonald v. Cutter (Cal.) 52 Pac. 120; Crane v. Noel et al. (Mo. App.) 78 S. W. 826; Moran v. Abbey et al., 63 Cal. 56; Wilson v. Brown, 13 N. J. Eq. 277; Johnson v. Gillett et al., 66 Okla. 308, 168 Pac. 1031; Employes' Building & Loan Ass'n v. Crofton, 63 Okla. 215, 164 Pac. 473.

From the foregoing, we conclude that the defendant Thomas E. Bobier was not entitled to subrogation to the Oklahoma Farm Mortgage Company judgment lien, and that the trial court did not err in so holding.

For reversal of the case, the plaintiffs in error next contend that the plaintiff's mortgage was invalid and not subject to foreclosure, inasmuch as it was executed subsequent to the execution and delivery and recording of the deed from J. R. Bobier and wife to the defendant Thomas E. Bobier. It is further contended by plaintiffs in error that parol testimony was not admissible to show that said deed was not in fact an absolute conveyance, but only a conveyance in trust, and they cite section 8462, Comp. Stats. 1921, which reads as follows:

"No trust in relation to real property is valid unless created or declared:

"First. By a written instrument, subscribed by the grantor or by his agent thereto authorized by writing.

"Second. By the instrument under which the trustee claims the estate affected; or,

"Third. By operation of law."

They further contend that, if a trust in this land was created at the time of the execution and delivery of said deed, it was an express trust growing out of the express agreement of Thomas E. Bobier to deed back this property to his grantors, and was not a resulting trust, sometimes called a trust by operation of law, as such trust never arises where there is a contract for trust between the parties. We are not unmindful of the authorities supporting this contention, but this court, in the case of J. I. Case Threshing Machine Co. v. Walton Trust Co., 39 Okla. 748, 136 Pac. 769, announced the rule to the contrary, which was reconsidered and readopted by this court in the case of Boyd v. Winte et al., 65 Okla. 141, 164 Pac. 781,

In the case of Threshing Machine Co. v. Walton Trust Co., supra, the court had under consideration a conveyance absolute upon its face, made by a banking company to one of its employes for the purpose of having said employe negotiate a loan upon the real estate conveyed for the benefit of the bank. The loan was negotiated by the employe, and the real estate sometime thereafter reconveyed to the bank. The J. I. Case Threshing Company had obtained a judgment against the employe sometime before the execution of the mortgage by him to secure the loan; the lien of which judgment would have attached to said real estate and would have been prior to the lien of the mortgage executed by him had title vested in said employe. In an action to foreclose a mortgage, the Threshing Machine Company claimed to have a lien because of its judgment prior to the lien of the mortgage. Commissioner Sharp, who delivered the opinion of the court, says:

"No better illustration of a trust arising by operation of law could be stated than here. The conveyance is made without consideration to one occupying a position of confidence and trust toward the grantor. * * * Although the deed executed by the bank to Edmonds purported on its face to be a warranty deed, conveying the absolute title, yet having been made wholly without consideration by a corporation to one of its officers, for the corporation's benefit, while no writings were entered into declaratory of the terms and conditions and the purposes for which the conveyance was made, it is clear that it was not intended by the deed to convey to the grantee the absolute title or to vest in him a beneficial interest in said lands, but instead to convey only the naked legal title. * * * Resulting trusts not being embraced within the statute of frauds, their existence need not be evidenced by any writing, and may, therefore, be established by parol evidence." McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176; Flesner v. Cooper, 39 Okla. 133, 134 Pac. 379.

In the instant case, the pleadings and testimony show that Thomas E. Bobier accepted the land under the oral terms imposed by the grantors, and with an agreement that he would reconvey said property upon the termination of the lawsuit then pending, or when requested by the grantors; that Thomas E. Bobier paid no consideration to the grantors for the conveyance; that the grantors remained in possession of said lands and cultivated a portion thereof and collected the rents from the remainder; that the grantors continued to pay the taxes thereon and to exercise complete dominion over same; that the grantee, although living in the immediate

vicinity, made no claim to the possession of the land or to the rents and profits of the same, and did not pretend to own or to exercise any supervision or control over it until after the death of the grantor.

We are unable to distinguish the facts of this case from the facts of J. I. Case Threshing Machine Co. v. Walton Trust Co., supra, and upon the authority of that case, we hold that the trial court properly permitted the plaintiff to establish, by parol, the fact that the defendant held this real estate as a mere trustee.

The plaintiffs in error next contend that, if the grantor did convey said land to the defendant Thomas E. Bobier by a general warranty deed, purporting to convey the entire title with the intention of the grantor to thereby create a secret trust with the beneficial interest within himself, for the purpose of defrauding the horse company b the appearance of the record, the entire titl^ was owned by the grantee; that, a resulting trust could not arise, and the law would r disturb the legal title, but would leave the parties in the position in which it found them.

Defendants cite the case of Flesner v. Cooper, 62 Okla. 263 Pac. 1112. This is the general rule when the lands are not a part of the homestead of the grantor. This rule is based upon the various maxims of equity, that a court of equity will not take jurisdiction to assist a wrongdoer. This court has held, however, that there can be no fraudulent conveyance of a homestead as against creditors of the grantor, for the reason that in no event could the homestead be subjected to such debts. Alexander v. Bobier, 65 Okla. 301, 166 Pac. 716. The property in controversy was the homestead of J. R. Bobier and wife at the time it was conveyed to Thomas E. Bobier. It could not have been conveyed so as to defraud the horse company; therefore, the rule announced in Flesner v. Cooper, supra, would not be applicable to the case at bar.

While there are, in several instances, sharp conflicts in the evidence, the trial court found generally for the plaintiff, and an examination of the record satisfies us that this finding is not against the clear weight of the evidence, and this being an equitable action, the findings of the trial court should be sustained unless it appears that they are clearly against the weight of the evidence. Prowant et al. v. Sealy et al., 77 Okla. 244, 187 Pac. 235, and cases there cited.

For the reasons stated, the judgment of the trial court is affirmed.

McNEILL, V. C. J., and NICHOLSON, COCHRAN, and HARRISON, JJ., concur.